LEE JOSEPH CUCUZZELLA, a minor, by his next friend, Mary Ann Cucuzzella and MARY ANN CUCUZZELLA, Plaintiffs Below, Appellants, v. STEPHEN A. BILINSKI, a minor, and MICHAEL BILINSKI, Defendants Below, Appellees.

(*May* 6, 1965)

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

*Arthur F. DiSabatino,* of Killoran & Van Brunt, for appellants.

*F. Alton Tybout,* for appellees.

Supreme Court of the State of Delaware, No. 99,1964

CAREY, Justice

Plaintiffs below have appealed from a summary judgment entered in the Superior Court for New Castle County in favor of appellees. Lee Cucuzzella (Lee) was injured while riding as a guest in an automobile driven bu Stephen Bilinski (Stephen). The issue is whether there is any evidence in the record to warrant a jury in finding that Stephen operated the car in "willful or wanton disregard of the rights of others", within the meaning of our Guest Statute, 21 *Del.C.* Sec. 6101. The evidence consists of certain exhibits and the depositions or affidavits of all persons who know anything about the occurrence of the accident.

We state the facts in the light most favorable to the appellants. On June 14, 1963, Lee, Stephen and Patrick McKeown, all minors, had been playing baseball, When it became too dark to play, they decided to take a ride and about nine o'clock obtained permission from Stephen's father to use his car. Mr. Bilinski drove them to his club, where he got out. The three boys, with Stephen driving and Lee sitting in front, then went North to Alapocas Drive and turned west. On Alapocas Drive they stayed about three or four car lengths behind another car driven by a Mr. Carter, traveling at a speed of 30 to 35 miles per hour. As they approached a woods, both cars slowed down to a speed between 20 and 30 miles per hour because of a curve to the left in the road. About the same time, Stephen lighted a cigarette. Very soon thereafter he dropped the cigarette. He was wearing Bermuda shorts and the lighted cigarette fell upon his bare leg. He tried to brush

it off and looked down to see where it was. Lee leaned over to help. Instead of following the curve, the car went straight ahead. Lee looked up, saw that the car was headed off the road, and told Stephen to look out. Stephen glanced up just as the car was leaving the road to the right, and he tried to apply his brakes. Either his attempt was unsuccessful or the brakes failed to hold, because the car did not slow down until it struck a tree, which completely stopped the car. Lee was injured by the impact and recalls nothing about the accident.

Police Officer Hitch soon arrived at the scene and took some rough measurements. He stated that the tire marks showed that the car left the road about 65 feet from the tree, the trunk of which is 10½ feet to the right of the paved roadway. A map or plot of the area, drawn to scale by a surveyor, shows the curve of the road and the location of numerous trees along both sides. The curve is by no means a sudden sharp one, but is comparatively lengthy.

After viewing the map, we have difficulty in understanding one item of evidence. Some days after the accident, Stephen allegedly said that he was driving off the road about 200 feet or so before he hit the tree. That statement cannot possibly mean that the car was moving in a straight line for 200 feet; a straight line from that point would run through other trees much nearer than the one actually hit. Possibly the statement, if made, meant that the car started to travel somewhat off the pavement but followed the curve of the road until it reached a point near the tree, although this possibility seems remote in view of the positive and otherwise uncondradicted testimony of the Police Officer concerning the tire marks. Appellants suggest that the statement warrants the inference that Stephen took his eyes off the road that far away from the point of impact. We will assume that a jury could and would draw that inference.

In summary, we have a case in which an operator, whose driving up to that point had been beyond criticism, dropped a lighted cigarette on his bare leg, understandably looked down—undoubtedly a reflex action—and, his attention diverted by concern about the cigarette, failed to look back at the road until he was too near the tree to avoid

hitting it, the total maximum period being under seven seconds, although probably less. Perhaps these facts would justify a finding of negligence, which is insufficient to justify a verdict for the appellants under the Guest Statute. Clearly, however, the facts do not warrant a finding of "wilful or wanton disregard of the rights of others" as required by the statute. That language has been explained in numerous Delaware cases. See, for example, *McHugh v. Brown,* 11 Terry 154, 125 A.2d 583; *Wagner v. Shanks,* Del. 194, A.2d 701. We see no need to discuss the authorities or to expand upon the pronouncements of previous decisions. It is enough to say that we find nothing in the evidence to demonstrate a "I-don't-care-a-bit-what-happens" attitude or, in other words, that Stephen's "conduct manifests conscious or high degree of indifference to consequences in circumstances where probability of harm to another * * * was reasonably apparent".

The decision of t'ᵸ Superior Court must be affirmed.