Warren F. SCHUELER, Jr., and Judy H. Schueler, his spouse, Plaintiffs,

v.

David K. MARTIN and The City of Newark, a municipal corporation, jointly and severally, Defendants and Third–Party Plaintiffs,

v.

James B. AUSTIN, Defendant.

Civ. A. 93C–12–258–JOH.

Superior Court of Delaware, New Castle County.

Submitted: Nov. 13, 1996.

Decided: Feb. 22, 1996.

Jeffrey M. Weiner, of Law Offices of Jeffrey M. Weiner, Wilmington, for plaintiffs.

Donald J. Detweiler and John D. Balaguer, of White and Williams, Wilmington, for defendants and third-party plaintiffs.

## OPINION

HERLIHY, Judge.

The matter before the Court is a motion for partial summary judgment brought by defendant City of Newark [Newark]. The specific issue is the ability of plaintiff to recover punitive damages from Newark.

### PROCEDURAL HISTORY

Newark and codefendant David Martin [Martin] previously moved for partial summary judgment. As will be described shortly in more detail, this is an action against the defendants for injuries suffered by plaintiff Warren F. Schueler [Schueler]. Martin was a Newark police officer when the events occurred giving rise to this lawsuit.

Martin's motion for summary judgment was premised on the proposition that his conduct was, at worst, negligent. Accordingly, he claimed immunity under 10 *Del.C.* § 4011(c). In a bench ruling, this Court determined that whether his conduct was negligent or performed with wanton negligence or willful and malicious intent was a factual issue incapable of being resolved on summary judgment. Conduct performed with wanton negligence or willful malicious intent strips a local government employee of immunity.

Newark's motion for partial summary judgment claimed it was not liable for two reasons, one because Martin's conduct was not reckless. The Court's disposition of Martin's motion resolved that portion of Newark's motion. The second prong of Newark's motion was that it was immune from liability for punitive damages. This argument was not well-developed in the original moving papers. Therefore, the Court ordered additional briefing.

### FACTUAL BACKGROUND

While on routine patrol, Martin overheard a radio broadcast that a James Austin [Austin] was being pursued and that the pursuit was close to Martin's location. Schueler, a Delaware State Police officer, was driving an unmarked police vehicle and was pursuing Austin. Martin was driving a marked police vehicle.

At one point, the officers pursued Austin into the College Square Shopping Center. A Newark radio broadcast was made to discontinue the pursuit. Believing it best to have a marked car remain in the pursuit, Martin did not discontinue. There is some testimony in the record to date suggesting that Martin's judgment was in error and that he should have obeyed the order to discontinue.

Newark's radio dispatcher issued a second command to end the pursuit if Martin were still in the shopping center. Martin responded to indicate that the pursuit was now on a public road and that the other pursuing vehicle was unmarked. He continued the pursuit.

The three vehicles were now on Delaware Route 273 heading east. Schueler began to shoot at Austin's vehicle. The Newark dispatcher radioed a third order to discontinue the pursuit. The pursuit continued for a brief while. Austin pulled over and Schueler pulled up behind. Schueler placed his car in parking gear and drew his gun, pointing it at Austin through the windshield of his police car. Schueler opened his car door, put his left foot out on the ground but his right foot was still in the vehicle. While in this position and alighting from his car, Martin drove up. He hit Austin's vehicle in an apparent attempt to block it. However, it is claimed that when Martin hit Austin's vehicle, he caused the Austin vehicle to strike Schueler's car causing injuries to Schueler. Martin la-

ter received a police department reprimand for his conduct.

As noted, determining whether Martin's conduct constituted negligence or wanton negligence or was performed with willful and malicious intent is a factual issue a jury needs to determine.

## CLAIMS

Schueler argues that he is entitled to recover punitive damages from the City of Newark if a jury finds Martin's conduct amounted to wanton negligence or had been preformed with willful and malicious intent. Schueler also contends that Newark's liability arises under *respondeat superior* and that the conduct by Martin's superiors of issuing only a reprimand amounted to ratification of Martin's conduct.

Newark replies that the County and Municipal Tort Claims Act [Act], 10 *Del.C.* §§ 4010 to 4013, does not permit Schueler to recover punitive damages from it.

## APPLICABLE STANDARD

■ A motion for summary judgment may only be granted where there no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Merrill v. Crothall–American, Inc.*, Del. Supr., 606 A.2d 96, 99–100 (1992). The facts must be examined in the light most favorable to the non-moving party. *Billops v. Magness Const. Co.*, Del.Supr., 391 A.2d 196, 197 (1978).

Since the parties have not claimed that there are any genuine issues of material fact as to Newark's motion, the question is whether Newark is entitled to judgment as a matter of law. An examination of the legal issues will be based on the factual premise, for purposes of the current motion, that Martin's actions were performed with either wanton negligence or with willful and malicious intent. Such a premise views the evidence in a light most favorable to Schueler.

## DISCUSSION

The issue presented is one of first impression: Is a local government entity liable for punitive damages for the reckless conduct or willful and malicious conduct of an employee or is it immune under the Act from such liability? The answer to that question involves a several-part analysis. The first part involves what conduct entitles an injured party to an award of punitive damages. The second part involves statutory construction.

### A

■ What conduct entitles an injured party to recover punitive damages? "Compensatory damages aim to correct private wrongs, while assessments of punitive damages implicate other societal policies." *Jardel Co., Inc. v. Hughes*, Del.Supr., 523 A.2d 518, 528 (1987). Because of the penal motivation of punitive damages, they are to be imposed where a defendant's conduct is " 'outrageous', because of 'evil motive' or 'reckless indifference to the rights of others.' " *Id.* at 529 (citations omitted).

The *Jardel* court said it preferred the words reckless indifference to wanton. *Jardel*, 523 A.2d at 530. It also reaffirmed an earlier case distinguishing wanton from willful and both those terms or conduct from mere negligence. *McHugh v. Brown*, Del. Supr., 125 A.2d 583, 585 (1956):

> Willfulness and wantonness involve an awareness, either actual or constructive, of one's conduct and a realization of its probable consequences while negligence lacks any intent, actual or constructive.

*Jardel*, 523 A.2d at 530 (citing *McHugh*, 125 A.2d 583). The *Jardel* court went on to say:

> [R]eckless (wanton) or willful conduct is required, ... as a ... prerequisite for the recovery of punitive damages ... even [when] gross negligence will not suffice.

*Jardel*, 523 A.2d at 530.

The purpose of this discussion is twofold. First, to indicate the type of conduct which acts as a necessary predicate to being able to recover punitive damages in Delaware. Second, there is a bright line between negligence on the one hand and wanton/reckless indifference or willful conduct on the other.

### B

■ The second part of the analysis of the pending issue necessarily starts with the

statutory language controlling local governmental entities [1]. Pertinent portions of § 4011 of the Act state:

(a) Except as otherwise expressly provided by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages. That a governmental entity has the power to sue or be sued, whether appearing in its charter or statutory enablement, shall not create or be interpreted as a waiver of the immunity granted in this subchapter.

(b) Notwithstanding § 4012 of this title, a governmental entity shall not be liable for any damage claim which results from:

(1) The undertaking or failure to undertake any legislative act, including, but not limited to, the adoption or failure to adopt any statute, charter, ordinance, order, regulation, resolution or resolve.

(2) The undertaking or failure to undertake any judicial or quasi-judicial act, including but not limited to, granting, granting with conditions, refusal to grant or revocation of any license, permit, order or other administrative approval or denial.

(3) The performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion be abused or whether or not the statute, charter, ordinance, order, resolution, regulation or resolve under which the discretionary function or duty is performed is valid or invalid. [Footnote added.]

\* \* \* \* \* \*

Paragraphs (1) to (6) of this subsection to which immunity applies are cited as examples and shall not be interpreted to limit the general immunity provided by this section.

(c) An employee may be personally liable for acts or omissions causing property damage, bodily injury or death in instances in which his or her governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent.

10 *Del.C.* § 4011. Section 4012 of the Act states:

A governmental entity shall be exposed to liability for its negligent acts or omissions causing property damage, bodily injury or death in the following instances:

(1) In its ownership, maintenance or use of any motor vehicle, special mobile equipment, trailer, aircraft or other machinery or equipment, whether mobile or stationary.

(2) In the construction, operation or maintenance of any public building or the appurtenances thereto, except as to historic sites or buildings, structures, facilities or equipment designed for use primarily by the public in connection with public outdoor recreation.

(3) In the sudden and accidental discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalines and toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water.

10 *Del.C.* § 4012.

■ Our Supreme Court has said that the enactment of the Act was intended to provide "a broad statutory premise for the invocation of immunity...." *Sadler v. New Castle County*, Del.Supr., 565 A.2d 917, 921 (1989). This principle has been reaffirmed. *Moore v. Wilmington Housing Auth.*, Del.Supr., 619 A.2d 1166, 1168 (1993). The Supreme Court has also stated that the three exceptions stated in § 4012 are the only exceptions to immunity, *Fiat Motors of North America v. Mayor and Council of Wilmington*, Del. Supr., 498 A.2d 1062, 1066 (1985), and are to be strictly construed, *Sadler*, 565 A.2d at 923.

■ Section 4012 of the Act creates several limited exceptions to local government immunity. The predicate to those exceptions, however, is that the local government employee committed a *negligent* act or omission. Obviously, negligent conduct under § 4012 cannot act as a sufficient predicate to entitle

1. By definition, Newark is a governmental entity. 10 *Del.C.* § 4010(2).

a plaintiff to recover punitive damages from a local government entity.

■ This Court has held that a municipality is not liable under the Act for damages for gross or wanton negligence in a residential building inspection and issuance of a certificate of occupancy. *Burns v. United Services Automobile Ass'n Properties Fund, Inc.,* Del.Super., C.A. No. 90C–MR–60, 1991 WL 53399, Herlihy, J. (March 14, 1991).

As applied to governmental entities the [Act] does not create an exemption from its blanket immunity provision for conduct that is intentional, willful, malicious, reckless or grossly negligent.

*Farris v. Moeckel,* D.Del., 664 F.Supp. 881, 897 (1987) (action against local town and several of its police officers arising out of seizing of van, town immune under Act), accord, *Smith v. Commissioners of Dewey Beach,* D.Del., 685 F.Supp. 433, 435 (1988) (allegation of willful and wanton misconduct did not deprive town of Dewey Beach of immunity). Thus, if a local governmental entity is not liable for this kind of conduct, an injured plaintiff cannot meet the prerequisite for entitlement to recovery of punitive damages from a local governmental entity.

A comparison of the scheme providing immunity and waiver of immunity for local governmental entities to the scheme providing immunity and waiver involving the State further shows an injured plaintiff's inability to recover punitive damages from a local governmental entity.

Sections 4010–4013 form one part of the Tort Claims Act which is found in Title 10, Chapter 40 and is divided into two subchapters. Subchapter I, §§ 4001–4005, is entitled "State Tort Claims". Subchapter II, §§ 4010–4013, is entitled "County and Municipal Tort Claims". Thus, on its face, the Tort Claims Act separates liability (waiver of immunity) and immunity based on the government unit involved. In addition, the primary immunity for the respective units, § 4001 for the State or its instrumentalities and § 4011 for local entities are worded differently. Those activities of the State or its instrumentalities which are immune do not correspond to the activities for which local governmental entities are immune. Further, the activities

exposing the State or a local governmental entity to liability are not identical.

A comparison of the provisions whereby local government entities lose their immunity to the provisions whereby the State or its instrumentalities can lose their immunity underscores the point. Section 4012 strips local entities of immunity under specified circumstances where the conduct was *negligent.* Section 4001 covering the State and its entities provides:

Except as otherwise provided by the Constitutions or laws of the United States or of the State, as the same may expressly require to be interpreted as requiring by a court of competent jurisdiction, no claim or cause of action shall arise, and no judgment, damages, penalties, costs or other money entitlement shall be awarded or assessed against the State or any public officer or employee, including the members of any board, commission, conservation district or agency of the State, whether elected or appointed, and whether now or previously serving as such, in any civil suit or proceeding at law or in equity, or before any administrative tribunal, where the following elements are present:

(1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer, employee or member, or anyone over whom the public officer, employee or member shall have supervisory authority;

(2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and

(3) The act or omission complained of was done *without gross or wanton negligence.*

10 *Del.C.* § 4001 [Emphasis added].

■ In other words, under § 4011(c) an *employee* of a local government entity may

become personally liable if his or her acts were performed with wanton negligence or with willful or malicious intent. On the other hand, assuming several other essential preconditions are also present, the *State* or any agency of the State can be liable where the act was done with gross or wanton negligence. However, § 4012 acts as a waiver of local governmental entity immunity where carefully prescribed acts are done *negligently*.

The legislative history of the two subchapters further show their differences and differing purposes. The Tort Claims Act was originally enacted in 1978 containing only those provisions found in §§ 4001–4005 covering the State and its instrumentalities. 61 *Del.Laws*, Ch. 431, effective July 8, 1978. In 1979, the legislature added the provisions relating to counties and municipalities. 62 *Del.Laws*, Ch. 124, effective July 5, 1979. That legislation *added* §§ 4010–4012 and evidenced the legislature's explicit awareness of the 1978 legislation because the second enactment designated the two subchapters as they now exist.

The preamble to the second enactment states, in part:

> WHEREAS, the Courts of the State of Delaware have recently reversed precedent and have pronounced that the counties and certain municipalities of the State of Delaware no longer are protected by the Constitutional defense of sovereign immunity; and
>
> WHEREAS, the provision of vital local governmental services is thereby placed in substantial jeopardy by the Courts' decisions; and
>
> WHEREAS, the cost of insurance, when obtainable, has reached proportions unanticipated by local government as a result of the multiplicity of lawsuits filed against local governments in recent years.

*Id.* Our Supreme Court has recognized that the passage of the provisions relating to counties and municipalities was designed to reverse decisions holding that the enactment of certain home rule statutes had waived

municipal immunity. *Fiat Motors v. Mayor and Council of the City of Wilmington*, Del. Supr., 498 A.2d 1062, 1065 (1985).

Because of its explicit awareness of the 1978 legislation, if the General Assembly, in 1979, had wanted to mirror what it had enacted in 1978, it could have done so. It did not. It clearly was addressing specific needs of local governments different from those confronting the State. Further, the preamble shows the impetus of the 1979 legislation stemmed from court decisions affecting local government immunity and insurance availability difficulties. The General Assembly knew what it had enacted only a year before concerning the State. It could have provided the same waiver language and/or exceptions as it had recently done. It chose not to do so.

Therefore, to engraft an exception onto the municipal immunity provisions in §§ 4011 or 4012, akin to the exception in § 4001(3) applicable to the State relating to wanton negligence, would be judicial legislating. This, the courts may not do. *General Motors Corp. v. Burgess*, Del.Supr., 545 A.2d 1186, 1191 (1988).

In interpreting a statute, this Court will assume that, where a provision is found in part of a statute but is omitted from another, the legislature was aware of the omission and intended it. *Giuricich v. Emtrol Corp.*, Del.Supr., 449 A.2d 232, 238 (1982). Further, the legislature is presumed to have inserted every provision for a useful purpose and when different terms are used in various parts of a statute, it is reasonable to assume that distinctions between the terms were intended. *C & T Associates v. Government of New Castle*, Del.Ch., 408 A.2d 27, 29 (1979).

Because of explicit recognition of the 1978 statute regarding the State in the 1979 legislation covering local governments, it is virtually inconceivable to find an omission. As noted § 4001 contains its own exceptions to State immunity.[2] However, § 4012 provides

---

2. Even though § 4001 provides for loss of State immunity in certain instances, that does not automatically make the State liable. The State only

waives immunity when it insures the particular risk. 18 *Del.C.* § 6511; *Doe v. Cates*, Del.Supr., 499 A.2d 1175, 1180–81 (1985).

the exceptions to the municipal immunity granted in § 4011. Therefore, the legislature clearly addressed the issue of the extent of municipal immunity and did not omit anything.

When examining §§ 4011 and 4012, the Delaware Supreme Court has said:

> In view of these statutory provisions, and in the absence of an explicit statute indicating otherwise, the activities listed in § 4012 *are the only activities as to which municipal immunity is waived.* [Emphasis added.]

*Fiat Motors,* 498 A.2d at 1066.

Further, the Court in *Burns* rejected the argument that § 4011 is silent as to the degree of negligence which waives municipal immunity thereby making the exception for State immunity in § 4001(3) public policy for all governmental units of this State. The Court's reasoning in *Burns* remains valid.

First, the just-reviewed analysis of the applicable statutes and the history of the enactment of the two separate subchapters alone is sufficient to rebut the argument. Second, the clear public policy relating to the exceptions to municipal immunity is not found in § 4001 but is limited to § 4012. It is wrong to argue that § 4011 is silent as to a standard *or degree of negligence while ignoring the* clear language of § 4012. *Fiat Motors,* the first sentence of § 4011(b) and common sense say the two sections must be read together. There is no ambiguity present which would allow for an interpretation that a local governmental entity is liable for wanton negligence or willful and malicious conduct of its employees.

When no ambiguity exists and the intent of the statute is clear from its language, there is no room for judicial interpretation. *Daniels v. State,* Del.Supr., 538 A.2d 1104, 1109 (1988).

The requisite threshold for recovery of punitive damages is reckless or willful or wanton conduct. Such conduct is much more reprehensible than negligence. A local government remains immune under §§ 4011 and 4012 even if its employee's conduct is reckless/wanton or willful and malicious. Because the waiver of immunity in § 4012 for a local governmental entity is just for certain negligent conduct, an injured party cannot cross the requisite threshold. Thus, Schueler cannot recover punitive damages from Newark even if Martin's conduct is found to have been performed with wanton negligence or with willful and malicious intent.

Finally, the court in *Farris* rejected the argument that local government entities are liable by virtue of *respondeat superior* if one of its employees engaged in reckless conduct. *Farris,* 664 F.Supp. at 896. That reasoning remains valid and is applicable here.

### CONCLUSION

For the reasons stated herein, the motion for partial summary judgment of the City of Newark is **GRANTED.**